UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KEVIN PRZEMYSLAW PAWLIK** | : | **CIVIL ACTION NO. 2:14-cv-3547** |
| BOP #10028-023 | | SECTION P |
| **VERSUS** | : | **JUDGE MINALDI** |
| **BARBARA MOOREHEAD, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Kevin Pawlik (hereinafter "Pawlik"), an inmate in the custody of the Federal Bureau of Prisons (hereinafter "BOP").[1] He is incarcerated at the Federal Correctional Institute in Oakdale, Louisiana (hereinafter "FCIO"). Pawlik names Barbara Moorehead, FCIO Chief Psychologist, and Anne Cuccio, M.D., a psychiatrist at the BOP's South Central Regional Office, as defendants. Doc. 1, att. 1, pp. 21–22. Pawlik seeks ten million dollars ($10,000,000.00) in damages for the defendants' alleged deliberate indifference to his medical needs. Doc. 4, p. 5. He also asks this court to order FCIO's psychology department to resume his treatment for Post-Traumatic Stress Disorder. *Id.*

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE**.

---

[1] This matter arises under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* authorizes civil rights suits filed against federal agents or employees for a violation of a constitutional right.

# I.
## BACKGROUND

Pawlik was diagnosed by the Veterans Administration ("VA") with major depressive disorder in 1997, for which he was treated with Prozac. Doc. 1, att. 1, p. 19. In 1998, the VA declared him to be 70% disabled. *Id.* At some point following his diagnosis, Pawlik was committed to BOP custody, where his Prozac regimen continued. *Id.* While in custody, he was also treated for PTSD with professional counseling and group therapy. *Id.* Pawlik was transferred to FCIO on April 1, 2008, and received treatment for his PTSD until September 22, 2009. *Id.* He alleges that on September 23, 2009, defendant Moorehead fraudulently and without Pawlik's knowledge terminated his PTSD treatment by alleging that "[Pawlik] decided that he was able to cope by working through the PTSD and Mind Over Mood workbooks." *Id.*

In mid-November 2009, Pawlik alleges, his PTSD flared up causing him to seek psychological treatment. *Id.* at 20. He alleges that his requests for counseling to deal with his PTSD were not met. *Id.* Pawlik subsequently filed multiple requests for copies of his psychological records. *Id.* After receiving the records in March 2010 he filed a grievance against Moorehead over termination of the PTSD treatment. *Id.* Pawlik alleges that Moorehead assured him that if he withdrew the grievance, the PTSD treatment would resume. *Id.* He claims that he dropped the grievance but that the PTSD treatment was not resumed. *Id.* at 20–21. Over the ensuing thirteen months he alleges that he only received treatment through the psychology department's open house sessions conducted on a walk-in basis. *Id.* at 21.

Pawlik contends that, on December 23, 2011, he discovered an erroneous entry in his medical records made by J. Mashimo, stating that his PTSD had resolved or was in remission as of January 28, 2010. *Id.* Pawlik filed another grievance against Moorehead over cessation of his PTSD treatment on January 31, 2012. *Id.* In March of 2012 FCIO Warden Young responded to

this grievance by stating that the psychology department had agreed to reevaluate his case and that a session had been scheduled for March 22, 2012. *Id.* at 21–22.

The session with the psychology department occurred as agreed. *Id.* at 22. Following the session a video conference with psychiatrist, Dr. Anne Cuccio, was scheduled for April 11, 2012. *Id.* Pawlik alleges that the Dr. Cuccio became verbally abusive to him during the session, stating that Pawlik was a felon who needed to take responsibility for his actions and that Cuccio was not concerned with his PTSD. *Id.* at 22–23. The video conference ended abruptly when Pawlik left the room to get water. *Id.* Pawlik complains that the end result of the conference was that Dr. Cuccio decreased his prescribed dosage of Prozac. *Id.* at 25. As a result he claims that his depression worsened dramatically necessitating treatment at FCIO's health services on June 11 and June 17, 2012. *Id.* at 25–26.

## II.
### LAW & ANALYSIS

#### *A. Frivolity Review*

Pawlik has been granted leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. Doc. 9. Under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), a district court is directed to dismiss an action if the court determines that the action is frivolous, malicious, or fails to state a claim on which relief may be granted. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 215 (5th Cir. 1998). In determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept the plaintiff's

allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley*, 157 F.3d at 1025 (failure to state a claim).

### B.  42 U.S.C. § 1983

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus, an initial inquiry in a lawsuit filed under § 1983 is whether a plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under § 1983. In order to hold the defendants liable under 42 U.S.C. § 1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *Hessbrook v. Lennon,* 777 F.2d. 999, 1005 (5th Cir. 1985), *abrogated on other grounds by McCarthy v. Madigan*, 503 U.S. 140, 142 n. 1 (1992).

A constitutional violation occurs only when two requirements are met. First, the prison official's act or omission must result in a deprivation that is sufficiently serious, such that it results in the denial of "the minimal civilized measure of life's necessities" or denies the prisoner some basic human need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)); *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). Second, the court must determine that the prison official responsible for the deprivation has shown "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotations omitted). A finding of deliberate indifference requires a finding that a prison official was personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed in

undertaking the act or omission complained of, and that he or she actually drew that inference. *Id.* at 837.

### C. *Application to Pawlik's Claims*

Pawlik's allegations do not rise to the level of cruel and unusual punishment under the Eight Amendment even to the extent that he is attempting to allege that his medical care was inadequate. In order to prevail on such claims, convicted prisoners must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458–59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotations and alterations omitted).

Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner," and so the prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106. Additionally, the

official must have a subjective intent to cause harm. *Mace v. City of Palestine*, 333 F.3d 621, 625–26 (5th Cir. 2003). In other words, deliberate indifference (i.e., a subjective intent to cause harm) cannot be inferred merely from a prison official's failure to act reasonably. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649 (5th Cir. 1996).

Furthermore, a plaintiff's mere disagreement with what medical care is appropriate or with the course of treatment offered by the medical staff will not, alone, suffice to state a claim of deliberate indifference to serious medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). In *Woodall v. Foti*, the Fifth Circuit stated that the applicable standard requires a balancing of the needs of the prisoner with the needs of the penal institution, and the test is one dependent on medical necessity rather than desirability. 648 F.2d. 268, 272 (5th Cir. 1981).

Additionally, the fact that a plaintiff does not believe his medical treatment was as good as it should have been is not a cognizable complaint under § 1983. Prisoners are not constitutionally entitled to the best medical care that money can buy. *Id*. Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1992). Similarly, the fact that a plaintiff continues to experience symptoms is insufficient to establish that a constitutional violation has occurred. *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992).

Here the information contained in Pawlik's complaint shows that he received a substantial amount of medical treatment including medication, appointments with doctors and counselors, and sick call appointments. His allegations, at most, state a disagreement with the medical and counseling staff regarding his course of treatment. As previously stated, such claims are insufficient to establish that a constitutional violation has occurred. Absent a constitutional

violation, federal courts are generally reluctant to interfere in the internal affairs of a prison. *See Shaw v. Murphy*, 532 U.S. 223, 223–24 (2001). Accordingly we find that Pawlik has not alleged facts sufficient to establish deliberate indifference and his claims should be dismissed.

### III.
### CONCLUSION

For reasons stated above,

**IT IS RECOMMENDED** that Pawlik's complaint be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), any party aggrieved by this recommendation has fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglas v. United Services Automobile Ass'n,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 30th day of September, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE